IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN REAL ESTATE, LLC, a Utah limited liability company, JEFFREY P. SCOTT and CASTLE ARCH REAL ESTATE INVESTMENT COMPANY, LLC, a California limited liability company,<br><br>    Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:09-CV-238<br><br>Judge Dee Benson |

This matter is before the court on plaintiff St. Paul Fire & Marine Insurance Company's motion for partial summary judgment (*see* Dkt. No. 13), and defendant Castle Arch Real Estate Investment Company's motion for relief pursuant to Federal Rule of Civil Procedure 56(f) (*see* Dkt. No. 18). The court heard oral argument on the matter on August 31, 2010 and September 7, 2010. Having considered the parties' arguments, memoranda, and the relevant law, the court enters the following Memorandum Opinion and Order.

## BACKGROUND

St. Paul issued a Real Estate Agents or Brokers Professional Liability Protection Policy to Metropolitan Real Estate, LLC ("Metropolitan") under Policy No. GL00647588, effective September 1, 2005 to September 1, 2006 (the "2006 Policy" or "Policy"). The Policy provides coverage to Metropolitan and its agent Jeffrey P. Scott ("Scott") for errors and omissions.

The Policy includes thirteen separate forms. In the form titled "Insuring Agreement," the Policy informs the insured what is covered by the Policy. First, the Policy states that St. Paul

will provide insurance coverage for real estate professional services liability. The Policy

includes the following language:

> **Real estate professional service liability**. We'll pay amounts any protected person is legally required to pay as damages for covered loss that:
>
> - results from real estate professional services by or for you;
> - is caused by a wrongful act committed on or after the retroactive date and before the ending date of this agreement; and
> - results in a claim or suit first made or brought against a protected person and reported to us while this agreement is in effect, or during the limited reporting period or the extended reporting period, if either one applies.
>
> We'll consider each wrongful act in a series of related wrongful acts to be committed on the date the first wrongful act in the series of related wrongful acts is committed.

(Dkt. No. 15-1 at P0450 page 2 of 13.) On the same page, the Policy defines "wrongful act" to

be any "error, omission, or negligent act; personal injury offense; or advertising offense." (*Id*.)

Second, the Policy states that St. Paul has a duty to defend the insured against claims or

suits for covered loss. The Policy provides as follows:

> **Right and duty to defend a protected person**. We'll have the right and duty to defend any protected person against any claim made or suit brought for covered loss.
>
> We'll do so even if any of the allegations of such claim or suit are groundless, false, or fraudulent. But we don't have a duty to perform any other act or service.
>
> We'll have the right to investigate and settle any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within
>
> - judgments; or
> - settlements . . .

(*Id*. at P0450 page 4 of 13.)

Third, the Policy states that St. Paul will reimburse the insured for defense expenses

incurred in a disciplinary proceeding. The Policy includes the following provision:

> We'll reimburse such defense expenses only if:

2

- they are incurred as a result of a wrongful act committed on or after the retroactive date and before the ending date of [the Policy]; and
- the complaint or proceeding by a real estate licensing commission or similar entity is first made or brought against a protected person and reported to us while this agreement is in effect, or during the limited reporting period or the extended reporting period, if either one applies.

(*Id*.)

Along with informing the insured what the Policy covers, the Policy informs the insured what the Policy does not cover. Losses not covered include those caused by criminal or fraudulent acts of the insured. On this point, the Policy states:

**<u>Exclusions – What This Agreement Won't Cover</u>**

\* \* \* \*

**Criminal, dishonest, or fraudulent wrongful acts or knowing violations of rights or laws**. We won't cover loss that results from any criminal, dishonest, or fraudulent wrongful act or any knowing violation of rights or laws committed by:

- the protected person; or
- anyone with the consent or knowledge of the protected person.

However, we won't apply this exclusion to our duty to defend that protected person until it has been determined through legal processes that such criminal, dishonest, or fraudulent wrongful act or such knowing violation of rights or laws was committed.

(*Id*. at P0450 page 10 of 13.)

The Policy also expands on St. Paul's reporting requirements under the heading "When This Agreement Covers." The Policy provides as follows:

**During this agreement or the limited reporting period or the extended reporting period, if either one applies**. We'll apply this agreement to claims or suits for covered loss only when they're first:

- made or brought against a protected person; and
- reported to us;

while this agreement is in effect, or during the limited reporting period or the extended reporting period, if either one applies.

*Limited reporting period* means the 60 days, starting with the ending date of this agreement, during which claims or suits for covered loss may be first made or brought against a protected period and reported to us.

*Extended reporting period* means the 12-month, 24-month, 36-month, or unlimited time period, as specified in the Extended Reporting Period Endorsement, starting with the ending date of this agreement, during which claims or suits for covered loss may be first made or brought against a protected person and reported to us.

**When we consider a claim or suit to be first made or brought**. We'll consider a claim or suit for covered loss to be first made or brought against a protected person on the earlier of the following dates:

- The date that we receive written notice of such claim or suit.
- The date that we receive written notice from any protected person of a specific wrongful act that caused the loss which resulted in such claim or suit.

We'll consider all claims or suits for covered loss that is caused by:

- the same wrongful act; or
- related wrongful acts;

to have been first made or brought against a protected person when the first of those claims or suits was first made or brought against a protected person.

(*Id.* at P0540 page 5 of 13.)

Finally, on a separate form, the Policy tells the insured what to do if they have a loss.

The Policy states in relevant part:

If your policy provides liability protection and there's an accident, act, error, event, incident, offense, or omission that may result in damages or other amounts which may be covered under that protection, you or any other person or organization protected under your policy must do all of the following in connection with that accident, act, error, incident, offense, or omission:

1. As soon as possible after having knowledge of the accident, act, error, event, incident, offense, or omission, tell us or one of our authorized representatives what happened. Do this even if no demand against you or any other person or organization protected under your policy has been made.

(Dkt. 15-1 at 40814 page 2 of 4.)

On September 28, 2005, Castle Arch filed the underlying state court action, *Castle Arch Real Estate Investment Company LLC v. Anagram Investments, Inc., et al.*, case number 050500327, in the Fourth Judicial District in and for Wasatch County, Utah (the "Castle Arch Suit"). On March 22, 2006, Castle Arch filed its First Amended Complaint, naming Metropolitan and Scott as parties to the Castle Arch Suit. The First Amended Complaint alleged only one cause of action, for fraud, against Metropolitan and Scott. On or about January 29, 2007, then-counsel for Metropolitan and Scott, James Morton, filed a notice of withdrawal of representation in the suit. Castle Arch filed its Second Amended Complaint on February 15, 2007. The Second Amended Complaint added causes of action against Metropolitan and Scott for negligence/negligent misrepresentation and intentional interference with economic relations. Subsequent to the filing of the Second Amended Complaint, Scott allegedly informed Castle Arch's counsel that he was notifying St. Paul and obtaining defense counsel pursuant to his errors and omissions policy. Shortly thereafter, on April 4, 2007, Blake Ostler entered an appearance to defend Metropolitan and Scott.

On July 27, 2007, Castle Arch filed a motion for partial summary judgment in which it sought a judgment against Metropolitan and Scott on its claims for fraud and negligence/negligent misrepresentation. On August 13, 2007, Ostler filed a memorandum in opposition to the partial summary judgment. On November 28, 2007, Ostler withdrew as counsel for Metropolitan and Scott. Subsequent to Ostler's withdrawal, the court scheduled an oral argument on Castle Arch's motion for February 12, 2008. On or about February 8, 2008, four days before the scheduled hearing on Castle Arch's motion, Metropolitan and Scott reported the Castle Arch Suit to St. Paul. They advised St. Paul at that time that Ostler had withdrawn as counsel for Scott and Metropolitan, and that the Castle Arch motion was scheduled to be heard

5

on February 12, 2008.  St. Paul promptly retained the law firm of Kirton & McConkie to defend Metropolitan and Scott.  On the same day, Kirton & McConkie filed a motion to continue the hearing on Castle Arch's motion.  On February 12, 2008, the court in the Castle Arch Suit denied the motion to continue and proceeded with the hearing on Castle Arch's motion.

On March 24, 2008, the court in the Castle Arch Suit entered an order in which it found that Metropolitan and Scott did not contest certain facts that Castle Arch asserted in its summary judgment motion.  Based on the undisputed facts, the court granted summary judgment for Castle Arch and against Scott with respect to the cause of action for negligence/negligent misrepresentation.  Castle Arch subsequently filed a motion for partial summary judgment against Metropolitan, seeking to hold Metropolitan vicariously liable for Scott's breaches of his duties, breaches that the court previously determined in the March 24, 2008 Order.  On or about February 6, 2009, the court entered an order granting Castle Arch's motion against Metropolitan.

St. Paul filed its Complaint in this matter on March 13, 2009.  Both Metropolitan and Scott were served in April of 2009.  St. Paul filed its Amended Complaint in this matter, naming Castle Arch as a defendant, on July 28, 2009.  St. Paul's action seeks a declaration of its contractual obligations to defend and indemnify Metropolitan and Scott with respect to the Castle Arch Suit.

Castle Arch filed its Answer to the Amended Complaint on September 28, 2009.  No responsive pleadings have been filed by Metropolitan and Scott.  No planning conference has been held by the parties.  No scheduling order has been entered in this matter.  No initial disclosures have been exchanged by any of the parties.  No requests for written discovery or notice of depositions have been served by any party to this matter.

On March 15, 2010, St. Paul filed its motion for partial summary judgment. On April 26, 2010, Castle Arch filed its opposition and a motion for relief pursuant to Federal Rule of Civil Procedure 56(f).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Utah R. Civ. P. 56(c). The court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A.  St. Paul's Motion for Partial Summary Judgment

St. Paul's primary argument is that it has no duty to defend or indemnify Metropolitan and Scott for the Castle Arch Suit because the suit was not reported to St. Paul until after the end of the 2006 Policy period. According to St. Paul, the 2006 Policy requires, as a prerequisite to coverage, that a claim or suit must be reported to St. Paul while the Policy is in effect. The 2006 Policy was effective in March 2006 when Castle Arch brought its suit against Metropolitan and Scott. However, the suit was not reported to St. Paul until after the end of the 2006 Policy period. Thus, St. Paul argues it is entitled to judgment as a matter of law because a clear requirement of the 2006 Policy was not met.

Castle Arch responds by arguing that summary judgment should be denied because there is a genuine issue of material fact regarding which insurance policy is applicable to the Castle Arch Suit. Specifically, Castle Arch argues there is a dispute whether the 2006 Policy is the governing policy because the cause of action that St. Paul is disclaiming under the terms of the

2006 Policy, negligence/negligent misrepresentation, was not brought by Castle Arch until February 15, 2007. Castle Arch argues the 2006 Policy was not triggered when Metropolitan and Scott were named as parties to the Castle Arch Suit on March 22, 2006 because the only claim against them was for fraud, which is not covered under the 2006 Policy. According to Castle Arch, Metropolitan and Scott had no reason to notify St. Paul concerning a claim until at the earliest February 15, 2007, the date Castle Arch asserted their negligence/negligent misrepresentation against Metropolitan and Scott.

In light of the parties' arguments, the court must determine whether the 2006 Policy requires, as a prerequisite for coverage, that all claims or suits brought against the insured during the policy period, whether covered or uncovered, be reported to St. Paul while the 2006 Policy was in effect.

Insurance policies are generally interpreted according to rules of contract interpretation. *See Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999). In construing a contract, the intention of the contracting parties is controlling. *Peterson v. Sunrider Corp.*, 48 P.3d 918, 925 (Utah 2002). If the language of the contract is unambiguous, the intention of the parties may be determined as a matter of law based on the language of the agreement. *See id*. If the contract is found to be ambiguous, the court may consider extrinsic evidence of the parties' intentions. *See id.* "A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms or other facial deficiencies.'" *Interwest Constr. v. Palmer*, 923 P.2d 1350, 1359 (Utah 1996). "Where a contract is ambiguous, summary judgment is appropriate only if the evidence, when viewed in the light most favorable to the nonmoving party, leaves no genuine issues of fact to be resolved." *Peterson,* 48 P.3d at 927.

In this case, a plausible reading of the 2006 Policy is that Metropolitan and Scott were required to report the Castle Arch Suit to St. Paul while the 2006 Policy was in effect because it was a suit brought against them during the policy period. When read in the disjunctive, the Policy's professional liability provision states that St. Paul is required to pay damages for covered loss only if it "results in a claim or suit first made or brought against [the insured] and reported to [St. Paul] while [the Policy] is in effect, or during the [applicable] reporting period." (Dkt. No. 15-1 at P0450 page 2 of 13.) Further, the Policy informs the insured that if the insured has liability protection, the insured must tell St. Paul of any accident, act, error, event, incident, offense, or omission that "may result in damages or other amounts which may be covered under that protection" even if no demand has been made against the insured. (*Id*. at 40814 page 2 of 4.) It is reasonable to read the policy language and understand that the insured is required to report any claim or suit to St. Paul that is first brought against the insured while the Policy is in effect.

On the other hand, another plausible reading of the 2006 Policy is that Metropolitan and Scott were not required to report the Castle Arch Suit to St. Paul while the 2006 Policy was in effect because the only claim against them at that time was for fraud, an uncovered loss. This reading is supported by the actions of Metropolitan and Scott. The Policy defines "wrongful acts" as any "error, omission, or negligent act; personal injury offense; or advertising injury offense." (*Id*. at P0450 page 2 of 13.) The Policy's professional liability provision states that St. Paul will pay for covered loss that (1) results from real estate professional services, (2) is caused by a wrongful act, and (3) results in a claim or suit first made and reported to St. Paul while the Policy is in effect, or during the applicable reporting period. (*Id*.) Likewise, St. Paul's duty to reimburse disciplinary defense expenses only applies if (1) the expenses are incurred as a result of a wrongful act, and (2) the disciplinary action is first brought and reported to St. Paul while

9

the Policy is in effect, or during the applicable reporting period. (*Id*. at P0450 page 4 of 13.) Under the heading "When This Agreement Covers," the Policy provides that St. Paul will apply the Policy to claims or suits for covered loss only when the claims or suits are first made or brought against the insured and reported to St. Paul while the Policy is in effect, or the applicable reporting period. (*Id*. at P0450 page 5 of 13.) The Policy explains that St. Paul considers all claims or suits for covered loss that are caused by wrongful acts "to have been first made or brought against [the insured] when the first of those claims or suits was first made or brought against [the insured]." (*Id.*) After all the policy language about what is covered, the Policy clearly tells the insured that loss that results from a fraudulent act committed by the insured is not covered loss. (*Id*. at P0450 page 10 of 13.) The court recognizes that St. Paul's duty to defend could still apply when an insured is accused of fraud, however, unlike the professional liability provision and reimbursement of disciplinary defense expenses provision, the Policy's duty to defend provision has no express reporting requirement. It is reasonable to read the policy language and believe that the insured is only required to report claims or suits for a covered loss, i.e., loss caused by an "error, omission, or negligent act; personal injury offense; or advertising injury offense." (*Id*. at P0450 page 2 of 13.) Therefore, the court finds that the 2006 Policy is ambiguous because St. Paul's reporting requirements are capable of more than one reasonable interpretation.

      Having determined that the Policy is ambiguous, the court must determine whether there are any issues of material fact. Viewing the evidence in the light most favorable to Castle Arch, a fact finder could find, based on the language of the Policy, that the Policy only requires the insured to report claims or suits for covered loss. If this is the case, and Metropolitan and Scott reported the negligence claim in the Castle Arch Suit to St. Paul on February 8, 2007, the fact

finder could determine that Metropolitan's and Scott's coverage was under a subsequent insurance policy, not the 2006 Policy.

Thus, St. Paul's motion for partial summary judgment is denied because the 2006 Policy is ambiguous and there are disputed issues of fact about which policy applies to the Castle Arch Suit.

B.  Castle Arch's Rule 56(f) Motion

Because the court denied St. Paul's motion for partial summary judgment, Castle Arch's Rule 56(f) motion is moot and therefore denied.

**CONCLUSION**

For the foregoing reasons, plaintiff St. Paul's motion for partial summary judgment is DENIED. Defendant Castle Arch's Rule 56(f) motion is DENIED as moot.

IT IS SO ORDERED.

DATED this 29th day of September, 2010.

Dee Benson
United States District Judge